**PEAVEY COMPANY, a corporation,**
**Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPA-**
**NY, a corporation, and Oregon-Wash-**
**ington Railroad & Navigation Company,**
**a corporation, Defendants.**

**Civ. No. 67–482.**

United States District Court
D. Oregon.
July 11, 1968.

Charles J. Strader, Black, Helterline, Beck & Rappleyea, Portland, Or., for plaintiff.

Walter J. Cosgrave, Maguire, Kester & Cosgrave, Portland, Or., for defendants.

## OPINION ON SEGREGATED ISSUE

KILKENNY, District Judge:

This case is before the Court on a segregated issue as to the meaning of an agreement between the parties. Involved are the rights and liabilities of the respective parties arising out of a collision between defendants' railroad cars and the plaintiff's car tipper installation. Plaintiff instituted this action for damages to its installation claiming negligence on the part of defendants. Defendants claim contributory negligence on the part of plaintiff.

 The accident occurred when defendant Union Pacific was delivering grain filled railroad cars to plaintiff on October 23, 1965. One of defendant's cars on plaintiff's spur track came in contact with a part of plaintiff's car shaker mechanism causing damage to the car and the car shaker mechanism. At that time, there was in existence a contract between plaintiff and the defendants for the maintenance and operation of the spur track from the defendants' main line to plaintiff's property and through facilities of plaintiff used for unloading grain from railroad cars. Section 8(a) of the agreement provided that nothing should be placed closer than eight feet six inches from the center of the track. It then listed various exceptions in subsections (b) and (c). Subsection (d), which I believe to be controlling, provided:

"In consideration of the benefits inuring to the Industry by virtue of this agreement and of the consent of the Railroad Company contained in paragraphs (b) and (c) of this section, the Industry for itself, its successors and assigns, hereby agrees to indemnify and hold harmless the Railroad Company from and against any and all loss, cost, damage, expense and liability for injury to or loss or destruction of property resulting from

the presence or existence of said clearance impairments, or from the installation, maintenance, use or existence of said planked crossings, planking and car shaker mechanism. Without in any way limiting the foregoing, it is specifically agreed that as to said car shaker mechanism, the foregoing indemnity provision extends to damage to rolling stock resulting from use thereof."

Southern Pacific Co. v. Morrison-Knudsen Co., 216 Or. 398, 338 P.2d 665 (1959), makes it irrelevant whether indeed defendants' negligence contributed to the damages as the indemnity provision here, as in that case, is sufficiently broad to save the railroad harmless from its own negligence. Neither Southern Pacific Co. v. Layman, 173 Or. 275, 145 P.2d 295 (1944) nor Waterman S. S. Corp. v. Brady-Hamilton Stevedore Co., 243 F.Supp. 298 (D.Or.1965), apply. Here, as in Unitec Corp. v. Beatty Safway Scaffold Co. of Oregon, 358 F.2d 470, 479 (9th Cir. 1966), the language of the indemnity agreement is clear and unequivocal. The language employed in the contract here under scrutiny is almost identical to that used in Southern Pacific Co. v. Morrison-Knudsen, *supra*. It is clear that the railroad did not want structures near the tracks and that, in consideration for its waiving this desire in certain limited areas, the plaintiff would be liable for all damages which might result.

Plaintiff argues that Section 8(d) was intended to pertain solely to cases involving injuries to third parties, but the language of the section does not permit that conclusion.

Plaintiff also argues that Section 9,[1] rather than Section 8, governs this action.

The first paragraph of Section 9 relates only to fires, and has no application. It is to be noted, however, that here again the industry agrees to indemnify the railroad for all losses. Reading the second paragraph of Section 9 with Section 8, it seems clear that the latter applies to any damages resulting from structures mentioned by subsections (b) and (c) placed close to the tracks, while Section 9 applies to all other damages which might occur on these side tracks not occasioned by one of plaintiff's structures. For these reasons, the indemnity provisions in Section 8 apply in this case and they require plaintiff to hold defendants harmless. Indeed, the whole scheme of Sections 8 and 9 is to limit the defendants' responsibility in consideration for its entering onto plaintiff's property. The parties were free to so contract.

This opinion shall be treated as my findings and conclusions on the segregated issue presented.

It is so ordered.

SUPPLEMENTAL OPINION

After a careful reading of the respective briefs, I can arrive at no conclusion other than that a decision on the issue of

1. "It is understood that the movement of railroad locomotives involves some risk of fire, and the industry assumes all responsibility for and agrees to indemnify the Railroad Company against loss or damage to property of the Industry or to property upon its premises, regardless of the Railroad Company's negligence, arising from fire caused by locomotives operated by the Railroad Company on the track, or in its vicinity, for the purpose of serving the Industry, except to the premises of the Railroad Company and to rolling stock belonging to the Railroad Company or to others, and to shipments in the course of transportation.

"The industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employees or agents, to the person or property of the parties hereto and their employees and agents, and to the person or property of any other person or corporation, while on or about the track; and 'if any claim or liability other than from fire shall arise from the joint or concurring negligence of the parties hereto (or of any two or more of them if there be more than two), it shall be borne equally by the parties at fault.' "

demurrage was inherent in my original opinion.

Aside from that, I have no difficulty in finding and holding that demurrage constitutes a "loss", "damage", or "loss * * * of property", within the meaning of the indemnity agreement. To me, it would be quite illogical to hold that the loss of the use of the freight cars did not constitute loss, damage or loss of property, within the meaning of the agreement. By analogy, Turner, Dennis & Lowry Lumber Co. v. C. M. & St. P. Ry., 271 U.S. 259, 262, 46 S.Ct. 530, 70 L.Ed. 934 (1926) and United States v. Southern Ry. Co., 364 F.2d 86 (5th Cir. 1966) support this view.

Defendants' counsel may prepare, serve and present an appropriate judgment.